736 S.W.2d 888 (1987)
The CITY OF LUBBOCK, et alius, Appellants,
v.
Bill KNOX, Appellee.
No. 07-86-0248-CV.
Court of Appeals of Texas, Amarillo.
August 18, 1987.
Rehearing Denied September 14, 1987.
*889 Michelle Hart, Asst. City Atty., John C. Ross, City Atty., Lubbock, for appellants.
Lane Arthur, Arthur & Arthur, Albert Perez, Lubbock, for appellee.
Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.
REYNOLDS, Chief Justice.
The City of Lubbock and the Civil Service Commission of Lubbock, collectively referred to as the City, have perfected this appeal from a summary judgment ordering that Police Lieutenant Bill Knox be included and retained on the eligibility list for promotion to police captain, and that he be promoted to and retained as captain pending appeal. The appeal requires us to determine, in inverse order of the City's two points of error, whether the district court had jurisdiction to review a civil service commission decision on promotion eligibility, and, if so, whether the court correctly interpreted the statutory provisions concerning eligibility for promotion. Determining that the court had jurisdiction to review the commission's decision, but that the court erred in its interpretation of those provisions, we reverse and remand.

Proceedings
Knox, a Lubbock police lieutenant who is credited with the maximum 10 points for seniority, is subject to the classification system contained in the civil service statute. See Tex.Rev.Civ.Stat.Ann. art. 1269m (Vernon 1963; Vernon Supp.1987).[1] The statute provides for promotional examinations to provide eligibility lists for each classification. Section 14. The statutory provisions interpreted by the trial court are contained in section 14(D)(2) and, insofar as they are material to this cause, read as follows:
[T]he grade which shall be placed on the eligibility list for each police officer applicant shall be computed by adding such police officer applicant's points for seniority to his grade on such written examination. Grades on such written examinations shall be based upon a maximum grade of one hundred (100) points and shall be determined entirely by the correctness of each applicant's answers to such questions. In any city having a population of 1,500,000 or more, according to the most recent federal census, all test participants receiving a grade of seventy (70) points or more shall be determined to have passed an examination. In any city having a population of less than 1,500,000, according to the most recent federal census, all test participants receiving a grade of seventy (70) points or more, or the top thirty (30) percent of the test participants who receive the highest grades, whichever is greater, shall be determined to have passed an examination.
In this regard, Lubbock is a city having a population of less than 1,500,000.
On a promotional examination for the classification of police captain, Knox scored 59.465 points, which was in the top 30% of the highest grades. With the addition of his 10 seniority points, his grade of 69.465 placed him second on the eligibility list. However, after all examinations were regraded two weeks later, his score was 66.799 points, which was not in the top 30% of the highest grades.
Because Knox's score on the examination neither was the passing grade of 70 fixed by the statute nor in the top 30%, the City did not place him on the second eligibility *890 list. Two other lieutenants placed on the second list were promoted to police captain to fill two existing vacancies.
Then, Knox originated the action in the district court which underlies this appeal. His action was an attack on the City's decision to regrade the examinations and to establish the second eligibility list, and he sought a declaration of the validity of the original eligibility list. Thereafter, a police captain vacancy occurred, and Knox amended his pleadings to alternatively allege that his grade (computed by adding his seniority points to his regraded examination score) was 76.799, that his grade entitled him to third place on the eligibility list, and that he should be promoted to fill the police captain vacancy.
Afterwards, Knox moved for summary judgment on the ground that his grade was 76.799 according to section 14(D)(2), which ensures his inclusion and retention on the eligibility list. In response, the City filed a plea to the jurisdiction of the court, and excepted to Knox's allegation that the statute requires he be credited with the higher grade.
The trial court exercised jurisdiction, granted Knox's motion for summary judgment, and rendered summary judgment. By its judgment, the court ordered, as pertinent to the appeal, that Knox's score on the examination, including his seniority credit, was 76.799, which dictates that he be included and retained on the eligibility list, and that he be promoted to and retained as captain until the cause is resolved on appeal.

Jurisdiction of the District Court
In presenting its second-point challenge to the district court's jurisdiction, the City, tracing the history of limited appeals from decisions of administrative bodies and imagining the nightmarish scenarios resulting from a right of appeal from any decision of the civil service commission, argues that, absent a constitutional or property right deprivation, there is no provision in article 1269m for appeal of commission decisions regarding promotion eligibility. It profits not to academically discuss the City's position, for section 18, as amended in 1977, now specifies, in part, that:
In the event any ... police officer is dissatisfied with any decision of the Commission, he may, within ten (10) days after the rendition of such final decision is sent to the officer ... file a petition in the District Court, asking that the decision be set aside, and such case shall be tried de novo.
Our Supreme Court has held that "Section 18, as amended, unequivocally provides that the affected officer may appeal any decision of the commission to the district court." Patton v. City of Grand Prairie, 686 S.W.2d 108, 109 (Tex.1985).
We recognize, as the City stresses in arguing that the right of appeal is limited to disciplinary matters, that the question in Patton was whether a decision of a city's civil service commission concerning a suspension is appealable to the district court; but, neither section 18 itself nor the Patton court's interpretation of it limits the right of appeal to selected matters. Moreover, subsequent to the decision in Patton, the Legislature twice made changes in section 18 without disturbing the language permitting, and interpreted by the Supreme Court as providing, an appeal from any decision of the commission to the district court. See Act of June 15, 1985, ch. 910, § 6, 1985 Tex.Gen.Laws 3052 (codified as Tex.Rev. Civ.Stat.Ann. art. 1269m, § 18 (Vernon Supp.1987)); Act of June 16, 1985, ch. 958, § 10, 1985 Tex.Gen.Laws 3231 (codified as Tex.Rev.Civ.Stat.Ann. art. 1269m, § 18 (Vernon Supp.1987)).
It is presumed that in amending the statute without changing the granted right of appeal from any decision of the commission, the Legislature knew and adopted the interpretation placed on it and intended the statute as amended to receive the same construction. First Employees Ins. Co. v. Skinner, 646 S.W.2d 170, 172 (Tex.1983). *891 If the Legislature had not so intended, it would have been an easy matter to provide otherwise. "If Parliament does not mean what it says, it must say so." Brazos River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99, 109 (1961).
We, as we must, take the statute as we find it. Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66, 70 (1920). And we find it to provide that any affected officer may appeal any decision of the commission, including one concerning promotion eligibility, to the district court. The City's second point of error is overruled.

Eligibility for Promotion
It is the City's first-point contention that the court erred in finding that Knox's promotional examination grade, which was less than the statutorily prescribed passing grade of 70, added to his seniority points produced a grade that dictated he be placed on the eligibility list. Joining the issue, the litigants pose this interpretational question: Does section 14(D)(2), excerpted in the forepart of this opinion, require that the test participant must make a minimum grade of 70 on the promotional examination to be placed on the eligibility list? The question is a novel one which, insofar as the research has shown, has not been heretofore addressed.
The City submits that the correct interpretation of section 14(D)(2) is that a test participant must make a minimum grade of 70 on the promotional examination to qualify for placement on the eligibility list, and if so, then the seniority points are added to compute the grade to be placed on the eligibility list. This interpretation, the City proposes, is the only one that gives plain meaning to every word in the section by this reasoning: The first sentence of the section tells how to calculate the grade the seniority points added to the written examination gradeto be placed on the eligibility list. Then, the rest of the section explains how to determine the grade on the written examination and who passes the examination. The requirement of 70 or more points for a passing grade dictates who are placed on the eligibility list, else the passing grade requirement would be meaningless if all who took the examination were placed on the list, a position not urged by Knox. This interpretation, the City declares, is consistent with the intent of the Legislature, as stated in section 16a, to reward seniority and provide for a capable and efficient police force.
To the contrary and in defense of the judgment rendered, Knox maintains that the first sentence of section 14(D)(2) is dispositive of the question. Since the first sentence provides that the grade placed on the eligibility list shall be computed by adding the police officer's seniority points to his grade on the written examination, he views the remainder of the section as dealing with the entirely different matter of the written promotional examination. Nowhere in the section, he points out, is it stated that the raw score on the examination controls whose name gets on the eligibility list, or that any condition must first be met before the first sentence provision becomes operative. Then, he suggests that by its interpretation, the City is attempting to require a passing score of 70 for eligibility when the statute itself does not, a proposition scuttled in Firemen's & Policemen's Civil Serv. Com'n v. Rodriguez, 326 S.W.2d 624 (Tex.Civ.App.San Antonio 1959, no writ).[2]
Although each of the differing interpretations offered by the City and Knox has facial plausibility, the City's interpretation is, upon applying the canons of construction to the statute, the more analytically correct one. The Legislature established a civil service system by statute for the declared *892 purpose of securing to cities with a population of 10,000 or more inhabitants efficient police and fire departments, composed of capable personnel free from political influence and with permanent tenure of employment as public servants. Sections 1, 16a (Vernon 1963). To this end, the Legislature provided that no police officer or fire fighter classification shall ever be filled except by competitive, written examinations, sections 8, 9, 14 (Vernon 1963), the results of which shall be used to create eligibility lists of applicants for original positions, section 9 (Vernon 1963), and for vacancies, each of which is to be filled by the person having the highest grade on the eligibility list unless good and sufficient written reasons are shown for appointing another person on the list. Section 10 (Vernon 1963).
Each police officer receives one point for each year of seniority not to exceed 10 points, sections 14(B) (Vernon 1963), 14(B), and generally, written promotional examinations are open to each officer who has held a continuous position for two years or more in the classification immediately below the classification for which the examination is held. Sections 14(A) (Vernon 1963), 14(A)(1). Grades on the examinations are determined entirely by the correctness of each police officer applicant's answers to the questions, sections 14(D) (Vernon 1963), 14(D)(2), and since 1957, the maximum grade attainable has ranged from 70 points, section 14(D) (Vernon 1963), to 100 points. Section 14(D)(2).
Prior to 1979, there was no statutory prescription for a passing grade on the written examination. At that time, a gradecomposed of the applicant's examination grade, seniority points, and efficiency report creditswas placed on the eligibility list for each applicant taking the examination. Section 14(D) (Vernon 1963). Accord Firemen's & Policemen's Civil Serv. Com'n v. Kennedy, 514 S.W.2d 237, 238 (Tex.1974). However, in that year, the Legislature amended section 14(D)(2) to prescribe that "[t]he minimum passing score for the written examination is seventy (70) points." Act of June 13, 1979, ch. 753, § 7, 1979 Tex.Gen.Laws 1862. That language remained until the Legislature again amended the section, effective 1 September 1985, by deleting and replacing it with the present language of the section, quoted earlier in this opinion, prescribing a grade of 70 points to pass the examination given in a city with a population of 1,500,000 or more, and a grade of 70 points or more, or a grade in the top 30%, whichever is greater, to pass an examination given in a city with a lesser population. Act of June 15, 1985, ch. 910, § 4, 1985 Tex.Gen. Laws 3049-50.
In amending the section to prescribe a passing grade, the Legislature, as Knox points out, did not change the preceding first-sentence provision that "the grade which shall be placed on the eligibility list for each police officer applicant shall be computed by adding such police officer applicant's points for seniority to his grade on such written examination." This amendment, together with the deletion of the minimum passing grade contained in the 1979 amendment, means, so Knox argues, that whether one passed the examination no longer controls the placement on the eligibility list. As the logical result of Knox's argument, he gives no effect to the current amendment, which conflicts with cardinal canons of construction.
It is an elemental rule of construction that by amending a statute, the Legislature intended to add to or change the existing law, and that effect must be given to the amendments. San Antonio Conserv. Soc., Inc. v. City of San Antonio, 455 S.W.2d 743, 746 (Tex.1970). In arriving at the intent of the amendments and the effect to be given them, we must look to, and consider the amendments in connection with, the entire statute, all sections of which must be considered as a harmonious whole acting upon each other. American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715, 719 (1931); Shipley v. Floydada Independent School Dist., 250 S.W. 159, 160 (Tex.Comm'n App.1923, judgmt adopted).
*893 The presumption is that the Legislature had a definite purpose in amending section 14(D)(2) to provide for a passing score on the promotional examination. Lacy v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496, 503 (1928). If not, then it engaged in a futile action, which we will not presume. State v. School Trustees of Shelby County, 150 Tex. 238, 239 S.W.2d 777, 781 (1951).
As earlier noted, the expressly declared purpose of the statute is to secure efficient police and fire departments, and to achieve that purpose, the Legislature determined that the personnel thereof should be appointed and promoted from those placed on eligibility lists created only as a result of competitive, written examinations. And as also noted, before the 1985 amendments, each applicant who took the written examination had a grade placed on the eligibility list, regardless of the score on the examination. Having settled on such examinations to create the eligibility lists, the Legislature had the right to determine, in connection with what it already had legislated, the score, i.e., the passing grade, on the examinations that would entitle the applicants to be placed on the eligibility lists.
Then, the only reasonable intent that can be given to the 1985 amendatory language of section 14(D)(2) prescribing the grade points to pass an examination is the intent to establish the minimum grade on the examination to qualify the applicants to be placed on the eligibility lists. That the language evidences this intent is manifested by the contemporaneous amendment to section 14(E)(1). Before the 1985 amendments, that section provided that to fill a vacancy in any classification, the commission shall certify to the head of the department the three names having the highest grades on the eligibility list, with the proviso that if less than three names remain on the list, then all names shall be submitted. The 1985 amendment altered the proviso to specify, as indicated by the underscoring, that:
If fewer than three (3) names remain on the eligibility list, or if only one (1) or two (2) applicants passed the written promotional examination, the name or names must be submitted to the Head of the Department. . . .
Act of June 15, 1985, ch. 910, § 4, 1985 Tex.Gen.Laws 3051. This provision has meaning and can be given effect only if making the prescribed passing grade on a promotional examination is a prerequisite to being placed on the eligibility list.
Clearly, then, the Legislature intended, and we hold, that by the 1985 amendment to section 14(D)(2), the specified passing grade on a promotional examination must be scored before the police officer applicant is entitled to have his grade placed on the eligibility list. To arrive at this construction of section 14(D)(2) is to give effect to the amendment and harmonize it with other sections of the statute. Accordingly, the City's first point of error is sustained.
It follows that since Knox did not achieve a passing grade on the promotional examination, he was not entitled to a grade on the eligibility list. As a result, he did not establish his right to summary judgment as a matter of law on the ground expressly presented to the trial court. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex.1979). Consequently, the trial court erred in granting his motion for summary judgment and in rendering summary judgment.
The judgment is reversed and the cause is remanded.
NOTES
[1] Subsequent designations of article 1269m, or of the statute, refer to article 1269m of the Texas Revised Civil Statutes Annotated (Vernon 1963; Vernon Supp.1987), and the designation of a numbered section refers to that section of article 1269m appearing in Vernon's 1987 Cumulative Annual Pocket Part unless otherwise noted.
[2] Explanatorily, the Rodriguez court held that the civil service commission's 1952 personnel rule requiring a passing grade of 70% on the basis of 100% for perfection on the written examination was superseded and rendered ineffective by the 1957 amendment to the civil service statute providing that grades on the written examinations shall be based upon a maximum grade of 70 points. 326 S.W.2d at 626.