Affirmed and Opinion filed December 11, 2007








Affirmed
and Opinion filed December 11, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00163-CV

____________

 

ELISA GRAVES, Appellant

 

V.

 

KENNETH MACK, IN HIS OFFICIAL
CAPACITY AS CHIEF OF POLICE, AND THE CITY OF GALVESTON, TEXAS, Appellees

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 06CV0526

 



 

O P I N I O N








A former police officer, who was on probation at the time
of her termination, sued a city and its chief of police, alleging that they
failed to follow and apply provisions of Chapter 614, Subchapter B of the Texas
Government Code when terminating her employment.  This subchapter applies to
police officers who are not covered by a civil service statute but exempts
officers who are protected by a collective bargaining agreement that meets two
requirements outlined in section 614.021(b).  The trial court granted summary
judgment in favor of the city.  As a matter of first impression, the main issue
on appeal is whether this subchapter applies to the city=s termination of
the police officer.  Concluding that the trial court correctly determined that
this subchapter does not apply, we affirm the trial court=s summary
judgment. 

I. Factual and Procedural
Background

Appellant/plaintiff Elisa Graves appeals the summary
judgment granted in favor of appellees/defendants the City of Galveston and
Kenneth Mack, in his official capacity as Chief of Police of the City of
Galveston.  The dispute arises out of the City=s termination of
Graves=s employment as a
Galveston police officer while she was still in the probationary period of her
employment.  The parties agree that Graves=s termination was
based on a pattern of off-duty misconduct during her probationary period and an
allegation of a specific incident of off-duty misconduct that occurred five
days before her termination. 

Graves asserts that prior to her termination, she was
entitled to certain procedural rights afforded to peace officers under sections
614.022 and 614.023 of the Texas  Government Code.  These sections provide that
the head of a police department must consider only a written, signed complaint
against an officer and that the officer is entitled to an investigation and to
receive a copy of the written complaint before being disciplined or terminated.









Under the Fire and Police Employee Relations Act,[1]
the City and its police officers executed a collective bargaining agreement. 
This collective bargaining agreement was in effect throughout Graves=s employment from
May 2, 2005 to October 25, 2005.  The City also had adopted the Fire Fighters= and Police
Officers= Civil Service Act
(hereinafter ACivil Service Act@) which, inter
alia, provides for administrative procedures by which police officers can
appeal disciplinary actions.[2] 
Article 28 of the collective bargaining agreement between the City and its
police officers makes reference to the Civil Service Act provisions for appeals
of disciplinary decisions.  The parties agree that Graves was not protected by
the Civil Service Act at the time of her termination because she had not yet
completed her probationary period.[3] 
As a result, Graves was not entitled to the grievance or appeal procedure under
the Civil Service Act following termination of her employment.

Graves filed this suit under the Texas Declaratory
Judgments Act,[4]
seeking various declarations to the effect that Subchapter B of Chapter 614 of
the Texas Government Code (hereinafter ASubchapter B@) applies to her
termination.  Both sides filed cross-motions for summary judgment as to whether
Graves was entitled to the procedural protections of Subchapter B relating to
investigation and discipline resulting from a complaint against an officer. 
The City and Mack maintain that Subchapter B did not apply to Graves under the
unambiguous language of the statute.  Moreover, the City and Mack maintain that
Graves=s employment
rights, as a probationary peace officer, were defined by the collective
bargaining agreement and Chapter 143 of the Texas Local Government Code.  The
trial court granted the City=s and Mack=s motion for
summary judgment and dismissed Graves=s claims with
prejudice. 

II. Issues Presented

Graves presents two
issues for review:








1.                 
Did the trial court err by granting summary judgment in favor of the
City and Mack and ruling that Subchapter B does not apply to the disciplinary
proceedings of a probationary police officer in the City of Galveston Police
Department?

2.                 
Did the trial court err by failing to interpret and apply the procedural
provisions of Subchapter B to a probationary police officer in the City of
Galveston Police Department?

 

III. Standard of
Review

In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, No. 04-0993, CS.W.3dC, C, 2007 WL 1713400,
at *1B2 (Tex. June 15,
2007).  When, as in this case, the order granting summary judgment does not
specify the grounds upon which the trial court relied, we must affirm the
summary judgment if any of the independent summary-judgment grounds is
meritorious.  FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000).  

IV. Analysis

Did the trial court err in granting
summary judgment in favor of the City and its Chief of Police by finding that
Subchapter B does not apply to the proceedings by which a probationary police
officer was terminated?

 








Graves, in her first issue, maintains that the trial court
erred in granting summary judgment in favor of the City and Mack by concluding
that Subchapter B did not govern grievances stemming from investigations or
disciplinary matters pertaining to the City=s peace officers.


Application of Chapter 614 of the Texas Government Code

Chapter 614 of the Texas Government Code outlines general
provisions applicable to peace officers and fire fighters employed by political
subdivisions within the state.  See Tex.
Gov=t Code Ann. '' 614.001, et
seq. (Vernon 2006).  Subchapter B provides rights and procedures regarding
the investigation of complaints and discipline of employees.  Id. ''  614.021B.023 (providing administrative procedures
by which certain employees may appeal disciplinary actions against them). 
However, under section 614.021(b), these procedures and rights do not apply to
certain peace officers and fire fighters:

[S]ubchapter [B] does not apply to a peace officer or fire fighter
appointed or employed by a political subdivision that is covered by a meet and
confer or collective bargaining agreement under Chapter 143 or 174, Local
Government Code, if that agreement includes provisions relating to the
investigation of, and disciplinary action resulting from, a complaint against a
peace officer or fire fighter, as applicable.

 

Id. ' 614.021(b). Under section 614.021(b), when a collective bargaining
agreement exists under Chapter 143 or 174 of the Texas Local Government Code[5]
and provisions in that agreement relate to the investigation of, and
disciplinary action resulting from, a complaint against a peace officer, peace
officers covered by the agreement are not covered by subchapter B.  See id. 

 

 








Interpreting the
Second Requirement of Section 614.021(b)

 In interpreting a
statute, a court must determine and apply legislative intent.  American Home
Prods. Corp. v. Clark, 38 S.W.3d 92, 95 (Tex. 2000).  If a statute is unambiguous, a court should interpret
the statute according to the plain meaning of the statute=s words.  Fitzgerald
v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999). 
Legislative intent is gleaned from the statute as a whole, and statutes are
interpreted to give effect to every part of the whole.  State ex rel. State
Dep=t of Highways & Public Transp. v.
Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002);  Jones v. Fowler, 969
S.W.2d 429, 432 (Tex. 1998). 

The parties agree
that the collective bargaining agreement between the City and its officers
exists under Chapter 174 of the Texas Local Government Code as recognized in Article
3(A) of the agreement.  Therefore, the first requirement of the exemption in
section 614.021(b) is met.  However, the parties disagree as to whether, under
the unambiguous language of the statute, the agreement=s provisions  meet
the second requirement that the provisions relate to the investigation of, and
disciplinary action resulting from, a complaint against a peace officer.  Tex. Gov=t Code Ann. ' 614.021(b).

Under the second
requirement, to be exempt from Subchapter B coverage, provisions within a
collective bargaining agreement must relate to the investigation of, and
disciplinary action resulting from, a complaint against the peace officer.  Id. 
The parties have not cited, and this court has not found, any cases
interpreting this language from section 614.021(b) of the Government Code.  One
issue is whether, to fall under the second requirement, the agreement must
provide procedures for investigation and disciplinary action.








The United States
Supreme Court and the Texas Supreme Court have determined that the ordinary
meaning of Arelating to@ is Ahaving a
connection with or reference to@ and that this is a broad term.  See
Metro. Life Ins. Co. v.  Massachusetts, 471 U.S. 724, 739, 105 S. Ct.
2380, 2388B89, 85 L.Ed.2d 728 (1985); Cathey v. Metro. Life
Ins. Co., 805 S.W.2d 387, 389B90 (Tex. 1991). 
We conclude that, under the plain and ordinary meaning of Arelating to,@ the agreement in
question need only include provisions having a connection with or  reference to
the investigation of, and disciplinary action resulting from, a complaint
against peace officers or fire fighters, to satisfy the second requirement of
section 612.021(b). See Metro. Life Ins. Co., 471 U.S. at 739,
105 S. Ct. at 2388B89; Cathey, 805 S.W.2d at 389B90. The agreement need
not provide or set forth procedures for investigation and disciplinary action.

The Collective Bargaining Agreement and Applicable
Provisions

Article 33 of the
City=s collective
bargaining agreement contains provisions relating to both the investigation of,
and disciplinary action resulting from, complaints against police officers. 
Additionally, Article 28 relates to discipline within the plain meaning of the
phrase.  We conclude that the agreement=s provisions
relate to both investigation and discipline.  As a result, these provisions
satisfy the second requirement of section 614.021(b), which exempts the City
from subchapter B.

Article 33 sets
forth a APolice Officer
Bill of Rights.@ This Bill of Rights has a connection with
and refers to the investigation of a complaint against a peace officer.  Therefore,
this article sufficiently relates to investigation by incorporating detailed
procedures to be followed during an investigation.  See Metro. Life
Ins. Co., 471 U.S. at 739, 105 S. Ct. at 2388B89; Cathey, 805
S.W.2d at 389B90.  Although Graves argues that Article 33 applies
only to interrogation or polygraph exams, the contractual language shows that
Article 33 provides detailed procedures that apply to a police officer Abeing questioned
by the City as an object of an investigation which a reasonable person could
believe will lead to discharge or criminal prosecution.@  Additionally,
Article 33(B) provides that Article 33 shall not infringe upon an employer=s Aright and power to
fully investigate matters it deems appropriate.@  This provision
refers to investigation of a complaint against a peace officer. 








Moreover, Article
33(C) provides that Article 33 shall not infringe upon an employer=s Aright and power to
discipline employees.@  Although the article does not
incorporate detailed procedures with respect to discipline, under the plain
meaning of the phrase Arelates to,@ the provision has
a connection with and refers to disciplinary action resulting from a complaint
against a police officer.  See Metro. Life Ins. Co., 471 U.S. at
739, 105 S. Ct. at 2388B89; Cathey, 805 S.W.2d at 389B90.  Because
Article 33 of the agreement relates to both investigation and discipline, the
City is exempt from Subchapter B under section 614.021(b).

In addition,
Article 28 of the collective bargaining agreement also relates to disciplinary
matters.  Article 28 states that A[d]isciplinary
matters shall not be subject to any of the terms of this Agreement.  Any appeals
of disciplinary decisions of the City shall comply with the requirements of the
Texas Fire Fighters= and Police Officers= Civil Service
Act, Chapter 143, Local Government Code.@  Graves contends
that under Article 28, no provisions within the agreement govern discipline and
that Article 28 adopts Chapter 143 for appeals only.  Graves argues that the
first sentence of Article 28 negates application of the agreement and its
provisions to any disciplinary matters such that the agreement no longer
relates to discipline.  

In Article 28, the
parties appear to be saying that disciplinary matters shall be handled under
the procedures of the Civil Service Act rather than under procedures set forth
in the collective bargaining agreement.  Nonetheless, presuming without
deciding that Graves=s interpretation of Article 28 is correct,
this article would adopt appeals procedures regarding disciplinary decisions
and therefore would relate to discipline.[6] 
See Metro. Life Ins. Co., 471 U.S. at 739, 105 S. Ct. at 2388B89; Cathey, 805
S.W.2d at 389B90.  

Under the
unambiguous meaning of Articles 28 and 33, we conclude that the collective
bargaining agreement meets the second requirement of section 614.021(b), such
that the City is exempt from subchapter B.

 

 








V.  Conclusion

 The City=s collective
bargaining agreement meets the two requirements of section 614.021(b), which
exempts such political subdivisions by virtue of: (1) their execution of a
collective bargaining agreement pursuant to Chapter 174 of the Texas Local
Government Code and (2) their inclusion in the agreement of provisions relating
to the investigation of, and disciplinary action resulting from, a complaint
against a peace officer or fire fighter.  Graves, as a probationary City
employee, is not entitled to procedures in Subchapter B because the City is
exempt from its coverage.  See Tex.
Gov=t Code Ann. ' 614.021(b). 
Under the unambiguous language of the relevant statutes and the collective bargaining
agreement, Subchapter B does not apply to the City as a matter of law.  Because
this subchapter does not apply to the City, the trial court correctly granted
the motion for summary judgment filed by Mack and the City.  Accordingly, we
overrule Graves=s first and second issues and affirm the
trial court=s judgment.   

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed December 11, 2007.

Panel consists of
Chief Justice Hedges and Justices Frost and Guzman.









[1]  Tex. Local
Gov=t Code Ann. '' 174.001, et seq. (Vernon
2006) (identifying, among other things, the right of police officers and fire
fighters to organize for collective bargaining).





[2]  Id. '' 143.001, et
seq. (Vernon 1999 & Vernon Supp 2007).





[3]  See id. ' 143.027(a)
(identifying that a probationary period for a new police officer, fire fighter,
or academy trainee lasts one year).  Upon completion of the probationary
period, the employee gains full civil service protection.  Id. ' 143.027(d); see Jones v. Ojeda, 21 S.W.3d 569,
571 (Tex. App.CSan Antonio 2000, pet. denied) (AThe Civil Service Act was designed to protect tenured
employees.@).





[4]  See Tex.
Civ. Prac. & Rem. Code Ann. '' 37.001, et seq. (Vernon
1997).





[5]  See supra nn.1, 2 (explaining that the Fire
and Police Employee Relations Act, Chapter 174, and the Civil Service Act,
Chapter 143, of the Texas Local Government Code provide rights to police
officers).  In this case, the parties agree that the City has adopted both
acts.  The collective bargaining agreement is executed by the City and its
police officers under the Fire and Police Employee Relations Act and makes
reference to the Civil Service Act appeals procedures in Article 28 of the
agreement. 





[6]  Indeed, even if Article 28 meant that the collective
bargaining agreement did not apply to disciplinary matters, this article still
would have a connection with and refer to disciplinary actions.